Abdullah **DOHAISH**, Plaintiff-Appellant,

v.

Dale **TOOLEY**, Defendant-Appellee.

No. 81–1607.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Feb. 2, 1982.

Decided Feb. 16, 1982.

R. J. Strong, Jr., Houston, Tex. (John E. Mosby, Denver, Colo., with him on the brief), for plaintiff-appellant.

Patricia M. Ayd, White & Steele, Denver, Colo., for defendant-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The appellant herein seeks reversal of a judgment of the District Court for the District of Colorado which dismissed an action which sought to compel the State District Attorney, Dale Tooley, to prosecute a man who allegedly killed appellant Dohaish's son. The district court dismissed the action against Tooley, finding that Dohaish lacked standing and secondly, that Tooley, as the prosecuting attorney in the case, was immune from suit.

The facts are these. Saud Dohaish, a Saudi Arabian student, was admitted to the

United States in 1977 for the purpose of studying English at Colorado Women's College. On the night of July 28, 1978, Dohaish and several friends went to Caesar's Nite Club, a Denver bar, to play billiards. Dohaish played pool with other club patrons after his friends wandered to another part of the area. During a game with a man named Eddie Santistevan some difference arose. In the course of this Santistevan struck Dohaish on the forehead with a pool cue. Dohaish was taken to the hospital and became unconscious. He died about one week later on August 7, 1978. Following a police investigation Santistevan was arrested and was charged with first degree murder, which charge was later reduced to second degree. In a statement to police about the incident Santistevan alleged that he had acted in self defense. He struck Dohaish, he said, only after Dohaish lunged at him.

On October 16, 1978, a preliminary hearing was held in the County Court in and for the City and County of Denver, Chief Judge George Manerbino was presiding. Both the prosecution and the defense extensively examined the witnesses. After the hearing, Judge Manerbino bound the case over for trial. Immediately thereafter, prosecutor Lawrence Orr moved to dismiss the charge against Santistevan. Judge Manerbino, in accordance with that motion, dismissed the action. The prosecutor gave no particular reason for the action that was taken. However, in an exchange of letters between the Saudi Arabian Educational Attache and District Attorney Tooley, the latter stated that the prosecution's election to dismiss grew out of the difficulty of negating Santistevan's self defense claim.

In any event the father of Saud Dohaish, Abdullah Dohaish, sued in federal district court alleging that the district attorney's refusal to prosecute stemmed from prejudice against Saudi Arabians and violated the fourteenth amendment as well as provisions of the Civil Rights Act, 42 U.S.C. § 1981, et seq.: Damages were requested and injunctive relief as well. In response to this, District Attorney Tooley filed a motion to dismiss, urging that prosecutors were immune from suit for actions performed within the scope of prosecutorial duties. Following a hearing on the motion, the district court dismissed the action, noting that Dohaish lacked standing to bring suit and that Tooley was immune from such an action. We are called upon to review this determination.

The theory of appellant Abdullah Dohaish is that no standing problem exists. He maintains that he is the appropriate party to enforce in court protections from discrimination based upon race, religion, national origin or alienage; to uphold rights which are conferred on both himself and his son by the Constitution. He thus contends that the district court's finding that he lacked standing was itself unfounded.

 The major obstacle to the Dohaish action, however, is the weaknesses in the suit itself. It is this deficiency which persuades us. It is quite true that there is also a lack of standing. When we say standing, we mean that the § 1983 civil rights action is a personal suit. It does not accrue to a relative, even the father of the deceased. [Note: It can descend to a relative under appropriate circumstances.] Because the discrimination which is alleged does not extend to the father, the father cannot bring the suit on such a basis in the federal court, or in the state court either, for that matter. In other words, the plaintiff Abdullah Dohaish has not suffered a violation of his civil rights whatsoever. We need not consider the legal effect where invasion of civil rights occurs prior to death, a condition which is not present here.

It is not unusual for standing and the cause of action based on violation of civil rights to be confused. See Wright & Miller & Cooper, 13 Federal Practice and Procedure, § 3531, at pp. 67–69 (Supp.) (1980). Both the question of standing and the question of legal sufficiency of the action focus on the nature of the plaintiff's injury and the nature of the invasion of his alleged right but different considerations underlie the two concepts.

■ An effort was made to clarify the distinction between standing and cause of action in *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). "Cause of action," the Court noted, is used "to refer roughly to the alleged invasion of 'recognized legal rights' upon which a plaintiff bases his claim for relief." Id. at 2274 n. 18. Thus the existence of a plaintiff's cause of action is a question whether he is a member of a class of litigants that may, as a matter of law, appropriately invoke the jurisdiction of the court. *Id.* at 2274 n. 18. In contrast to the "cause of action" inquiry on the nature of the right asserted, the "standing" inquiry is a subsequent evaluation of the nature or extent of the plaintiff's injury—his stake in the action. Thus, a plaintiff's standing is a question of whether he is "sufficiently adversary to a defendant to create an Article III [of the Constitution] case or controversy, or at least to overcome limitations on federal court jurisdiction." *See also* the opinion of the Supreme Court in *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).

The problem, then, is the inability of Abdullah Dohaish to show that any recognized legally valid right, or even privilege, was violated by the district attorney's refusal to prosecute Santistevan. To be sure, as a practical matter, a father is closely related to the son and, thus, he feels the injury to a tremendous extent when his son suffers death. However, he does not have a civil right to pursue such an action.

■ The ordinary citizen does not have a general interest justifying a lawsuit based on the criminal prosecution or non-prosecution of another. *Linda S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). Such a right is not recognized in the law and, indeed, it would be contrary to public policy to allow every private citizen to force the prosecutor to proceed with a case in pursuit of a private objective. The district attorney is sworn to uphold the law generally and does not have a duty to enforce the law for the purpose of providing satisfaction to a third person who has no direct legal interest.

■ Even if such actions were permitted, only the victim would have the required legal standing to bring such an action. *See Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). The plaintiff himself must have suffered harm. *Cf. Sanchez v. Marquez*, 457 F.Supp. 359, 362–63 (D.Colo.1978). Sanchez held that brothers and sisters of a decedent could not claim that their constitutional rights were violated by the death. It is further elaborated in *Sanchez* that the brother and sister would have been limited to an action to redress violations of the victim's own rights.

This does not mean that an action on behalf of the victim to vindicate his alleged right to prosecute could be brought, for this would be barred by state survival statutes. The Colorado Survival Statute, C.R.S. § 13–20–101 (1973) provides for the survival of most actions that have "accrued" prior to death. Here no action accrued during the lifetime of the decedent; it could have accrued only when the district attorney dismissed the charge and this was long after the death in this very sad case.

At best, relief in this kind of situation would be highly uncertain. Even if he prevailed in this action, appellant would have no guarantee about the effectiveness of granting the requested relief; that there would be a conviction in the subsequent criminal case. *See, e.g., Warth v. Seldin, supra*, at 503–05, 95 S.Ct. at 2207–08.

We are not saying that there are no possible remedies available. Appellant Dohaish was at liberty to pursue remedies other than this action against the district attorney. A Colorado statute would have allowed Dohaish to file an action requesting the state judge to compel the prosecuting attorney to show good cause for dismissing the charge against the suspect. C.R.S. 16–5–209 (1973). The purpose of that statute is to allow persons who believe that a prosecuting attorney is not pursuing a case with diligence to petition the court to review the status of the case. Should the court be dissatisfied with the prosecutor's response to the show cause order, direction can be

given to the prosecuting attorney to file the charges and even to appoint a special prosecutor to handle the case. *Id.*

Still another remedy which would have been available to Dohaish would have been to file a wrongful death suit against the *assailant.* C.R.S. 13–21–202 (1973). However, the case that is presented is, for the reasons that we have already mentioned, lacking in the prerequisites of a legal cause.

 We have not mentioned the important factor that Tooley enjoys an absolute immunity from suit. This is for the purpose of guaranteeing to him unlimited independence in the discharge of his duties. *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). That case conclusively established that prosecutors are not required to submit to civil actions questioning their judgment in their performance of "quasi-judicial" duties. The quasi-judicial duties of a prosecutor include conduct involved in initiating a prosecution and presenting the state's case. A decision not to prosecute is a decision which is protected by that immunity. *See, e.g., Maynard v. Kear,* 474 F.Supp. 794, 798 (N.D. Ohio 1979) (prosecutor there acted within the scope of his duties in deciding not to charge suspects with a crime; such discretionary acts are protected by absolute immunity); *Tyler v. Ryan,* 419 F.Supp. 905, 907 (E.D.Mo.1976) (failure to prosecute is an act within the scope of prosecutorial duties and is protected by immunity); *cf. Van Meveren v. District Court of Larimer County,* 186 Colo. 335, 527 P.2d 50, 52 (1974) (prosecutor's decision to move for the dismissal of a criminal charge is a matter of discretion; the courts are not allowed to interfere with such decisions). It is similar to a decision to prosecute, and is shielded for the same reasons. *Imbler v. Pachtman, supra,* 424 U.S. at 424–25, 96 S.Ct. at 992; *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927).

Finally, there is not the slightest indication of either bias or discrimination.

The decision of the district court to dismiss the action is affirmed.