Jessie Gail CLIFT, by Jane CLIFT, Administratrix of her Estate, Jane Clift, Robert Clift, Jr., William A. Clift, Barbara Clift Francis, and Mary Jane Clift Cole,

v.

Jaylon FINCANNON, Former Superintendent Fort Worth State School, Present Superintendent Austin State School, Arren C. Buchannan, M.D., Former Medical Director Fort Worth State School, Norman Read, M.D., Former Staff Physician Fort Worth State School, in their official and individual capacities; and State of Texas; Texas Department of Mental Health and Mental Retardation.

Civ. A. No. S–84–5–CA.

United States District Court,
E.D. Texas,
Sherman Division.

April 13, 1987.

Bryce J. Denny, Sherman, Tex., for plaintiffs.

Toni Hunter, Asst. Atty. Gen., State & County Affairs, Austin, Tex., for defendants.

### MEMORANDUM OPINION AND ORDER

PAUL N. BROWN, District Judge.

This civil rights action arises from the death of Jessie Gail Clift on August 6, 1980, while committed to the care, custody and control of the Fort Worth State School. Suit is brought against the State of Texas, the Texas Department of Mental Health and Mental Retardation ("MHMR"), the Fort Worth State School, and against Jaylon Fincannon, Arren C. Buchannan, M.D., and Norman Read, M.D., in their individual and official capacities. Presently pending and under consideration is State Defendants' Motion for Summary Judgment and

Individual Defendants' Motion for Summary Judgment.

Plaintiffs' First Amended Complaint ("the complaint") invokes the federal question jurisdiction of this Court under 28 U.S.C. § 1331 and seeks damages and declaratory relief. As a basis for invoking such jurisdiction the Plaintiffs have alleged causes of action under various federal statutes. Specifically, they allege causes of action under 42 U.S.C. §§ 1983,[1] 1985(3),[2] 6010,[3] 6011,[4] 6063 [5] and 29 U.S.C. § 794.[6] At the outset it should be noted that while some of these statutes do create private causes of action for money damages, some create neither a private cause of action for money damages nor do they create any substantive rights.

In addition to the federal claims, Plaintiffs also assert pendent state-law claims. However, the disposition of the federal claims pretermits the need for reaching these claims.

Decedent Jessie Gail Clift was a handicapped quadriplegic who had been committed to the care and custody of the MHMR facilities in Fort Worth.[7] Plaintiffs allege that on or about August 6, 1980, Jessie Gail Clift, while being given a whirlpool bath by an employee of the Fort Worth State School, was left unattended, that this was negligence on the part of the named Defendants, and that as a result of such negligence decedent slipped under the water and drowned. Defendants dispute this allegation contending that Jessie Gail Clift died from acute respiratory failure due to aspiration of gastric contents.

Plaintiffs further allege that Jessie Gail Clift's death was attributable to misuse of drugs, failure to render adequate emergency treatment and failure to follow established emergency procedures prescribed by the Texas Mental Health Code.[8]

The complaint also alleges that Jessie Gail Clift suffered constitutional deprivations under the First, Fourth, Eighth, Ninth and Fourteenth Amendments by actions and/or inactions of the individually named Defendants in their capacity as state actors. None of these claims is alleged to have caused the death. These claims are discussed more fully below in conjunction with the section on qualified immunity.

## STANDING

Plaintiffs include Jessie Gail Clift's estate; her mother, Jane Clift; her brothers, Robert Clift, Jr. and William A. Clift; and her sisters, Barbara Clift Francis and Mary Clift Cole. Initially, the Court is confronted with a standing issue which presents three related but separate questions: (1) whether § 1983 and/or § 1985(3) afford parents a cause of action for a wrongful killing of their child by a state actor; (2) whether § 1983 and/or § 1985(3) afford

1. Section 1983 confers a private federal right of action for damages and injunctive relief against state actors who deprive any citizen or person within the jurisdiction of the United States of "rights, privileges, or immunities secured by the Constitution or laws." *See, e.g., Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (constitutional deprivations); *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (statutory violations).

2. 42 U.S.C. § 1985(3) creates a private right of action for damages for injury or deprivation caused by a conspirator to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

3. 42 U.S.C. § 6010 provides no cause of action nor any substantive rights.

4. 42 U.S.C. § 6011 provides no cause of action nor any substantive rights.

5. 42 U.S.C. § 6063 provides no cause of action nor any substantive rights.

6. 29 U.S.C. § 794 provides a cause of action for handicapped individuals who have been intentionally discriminated against based on their handicap by programs receiving Federal financial assistance. *See Guardians Association v. Civil Service Commission,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983); *Carter v. Orleans Parish Public Schools,* 725 F.2d 261 (5th Cir. 1984).

7. The record is unclear whether she was committed voluntarily or involuntarily, however, the Court need not make that determination in the disposition of this case.

8. The above allegations of negligence will not be considered by the Court as a basis for establishing a § 1983 cause of action. *See* footnote 13, *infra.*

siblings a cause of action for a state actor's wrongful killing of one of their brothers or sisters; and (3) whether a § 1983 and/or § 1985(3) cause of action survive one's death?

The Reconstruction-era Civil Rights Acts, 42 U.S.C. § 1981 *et seq.*, fail to specify many rules which are necessary in civil rights litigation. This is especially true with section 1983 cases because section 1983 does little more than create a cause of action. Congress meant for the statute to serve only that general function, however, and it indicated that intention by enacting 42 U.S.C. § 1988 (1982).[9] That statute purports to govern the choice of law analysis for determining the appropriate rule to be applied. Under section 1988, federal courts must undertake a three-step inquiry to determine whether to fill a deficiency in the Acts by borrowing a state rule: (1) the court must first determine if there is controlling federal law; (2) if not, then the court must consider application of the state common law, as modified by the constitution and statutes of the forum state; and (3) then the court must apply the state law so long as it is not inconsistent with the Constitution and the laws of the United States. *Burnett v. Grattan,* 468 U.S. 42, 104 S.Ct. 2924, 2928–29, 82 L.Ed.2d 36 (1984).

The Court begins its analysis by undertaking the first step of the three-step inquiry. There is no controlling federal law with respect to the survivability of a § 1983 or § 1985(3) cause of action in favor of the decedent's parents, the decedent's siblings, or the decedent's estate. Therefore, the Court must undertake the second step of the three-step inquiry.

 Under the second step of the three-step inquiry, the relevant sources of state law are the wrongful death and survival statutes.[10] In Texas, the nature of the cause of action determines which of the statutes control. A claim that involves damages personal to the plaintiff invokes a wrongful death claim. Section 71.004 of the Civil Practice and Remedies Code states that wrongful death claims are for the exclusive benefit of the surviving spouse, children, and parents of the deceased. Therefore, Jessie Gail Clift's brothers and sisters have no standing under the state law of Texas to bring claims in their own right. Although Jane Clift, the decedent's mother, has standing under § 71.004 to assert a wrongful death claim, the Code limits her claim to acts which caused Jessie Gail Clift's death by reason of the state actor's wrongful act, neglect, carelessness, unskillfulness, or default. V.T.C.A., Civil Practice & Remedies Code § 71.002.

 A claim that involves damages personal to the decedent, on the other hand, is considered a survival action. State law on survival of actions provides in pertinent part: "[a] cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured per-

---

**9.** 42 U.S.C. § 1988 provides in pertinent part: "The jurisdiction ... conferred on the district courts [by the civil and criminal Civil Rights Titles] for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause...."

For discussion of the history of 42 U.S.C. § 1988 and its complementary role in the scheme of federal civil rights legislation, see *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 1792, and n. 13, 1792–1794, and nn. 18–29, 36 L.Ed.2d 596 (1973).

**10.** Effective September 1, 1985, the Texas legislature repealed the Wrongful Death Act, Tex. Rev.Civ.Stat.Ann. arts. 4671 *et seq.* (Vernon 1970) [codified Civil Practice and Remedies Code section 71.001 *et seq.* (Vernon Supp. 1985) ]. Effective the same date the Texas legislature also repealed the Texas Survival Statute, Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1970) [codified Civil Practice and Remedies Code section 71.021 (Vernon Supp.1985) ]. The recodification made no substantive changes. *See* V.T. C.A., Civil Practice & Remedies Code § 1.001.

son.... A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." V.T.C.A., Civil Practice & Remedies Code § 71.021.

In sum, application of state wrongful death law results in granting standing to decedent's mother while denying standing to her siblings; and application of state survival law results in granting standing to the heirs, legal representatives, and estate of Jessie Gail Clift to maintain actions on her behalf. The third step of the three-step inquiry requires this Court to determine whether application of the adopted state rules of law are inconsistent with the Constitution or laws of the United States.

"In resolving questions of inconsistency between state and federal law raised under § 1988, courts must look not only at particular federal statutes and constitutional provisions, but also at 'the policies expressed in [them].'" *Robertson v. Wegmann*, 436 U.S. 584, 98 S.Ct. 1991, 1995, 56 L.Ed.2d 554 (1978) (quoting *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 90 S.Ct. 400, 406, 24 L.Ed.2d 386 (1969)). The instant actions arise under 42 U.S.C. §§ 1983 and 1985(3). The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law. *See, e.g., Monroe v. Pope*, 365 U.S. 167, 81 S.Ct. 473, 476–484, 5 L.Ed.2d 492 (1961). The policy underlying § 1985(3) is to provide a civil remedy for conspiracies directed at depriving a person, or class of persons, of equal protection of the laws, or of equal privileges and immunities under the laws, when there is some invidiously discriminatory animus behind the conspirator's action. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971). None of the policies behind these statutes is subverted by the adoption of the State of Texas survival or wrongful death law. "A state statute cannot be considered 'inconsistent' with federal law merely because the statute causes [a] plaintiff to lose the litigation." *Robertson v. Wegmann, su-*

*pra*, 98 S.Ct., at 1996. Moreover, "it defies history to conclude that Congress purposely meant to assure to the living freedom from such unconstitutional deprivations, but that ... it meant to withdraw the protection of civil rights statutes against the peril of death." *Brazier v. Cherry*, 293 F.2d 401, 404 (5th Cir.1961).

■ However, state law is inconsistent with federal law to the extent that it would permit recovery for actions which do not rise to the level of a constitutional deprivation. Section 1983 only provides a remedy for actions which deprive persons of federal rights. To the extent that state law is inconsistent with federal law, the federal law will be controlling.

## ELEVENTH AMENDMENT IMMUNITY DEFENSE

■ The State Defendants[11] have raised the Eleventh Amendment defense. The Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar that the court must give it first consideration. *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 3314, n. 18, 73 L.Ed.2d 1057 (1982). In fact, Eleventh Amendment sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III, § 2 of the United States Constitution. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984) (*Pennhurst II*). Moreover, the limitation deprives federal courts of any jurisdiction to entertain such claims, and thus may be raised at any point in a proceeding. *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 351, 89 L.Ed. 389 (1945). When the defense is successfully asserted, the court is without subject-matter jurisdiction, *Crane v. State of Tex.*, 759 F.2d 412, 415 (5th Cir.1985), and the proper disposition is an order of dismissal without prejudice. For these reasons the Court will consider State Defendants' motion as a motion to dismiss for lack of jurisdiction under Rule

---

11. *State Defendants include the State of Texas, the Texas Department of Mental Health and Mental Retardation, the Fort Worth State* School, and Jaylon Fincannon, Arren C. Buchannan, M.D., and Norman Read, M.D., in their official capacities.

12(b)(1) of the Federal Rules of Civil Procedure.

■■■ The State of Texas has been sued as a named party defendant. The Eleventh Amendment denies federal courts jurisdiction over any action wherein a state is named as a defendant, and this jurisdictional bar applies unless the state has unequivocally consented to be sued in federal courts. *McKay v. Boyd Const. Co., Inc.*, 769 F.2d 1084 (5th Cir.1985). The Court finds no waiver or consent to suit in federal courts by the State of Texas. The State of Texas has waived its common law sovereign immunity in regard to certain negligent acts, but a waiver of a state's immunity from suit in its own courts will not be inferred to extend to a waiver of its constitutional immunity from suit in federal courts. *See, e.g., Florida Dept. of Hlth. v. Florida Nursing Home*, 450 U.S. 147, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (per curiam). "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst II, supra*, 104 S.Ct., at 907. "[I]t is not consonant with our dual system for the Federal courts ... to read the consent to embrace Federal as well as state courts.... [A] clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found." *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 877, 88 L.Ed. 1121 (1944). The State of Texas does not state such an intention in its statute which waives her immunity from suit for certain negligent acts. Therefore, the State of Texas has not consented to this suit.

■■■ However, "Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). In order for Congress to abrogate Eleventh Amendment immunity the statute must indicate an "unequivo-

cal expression of Congressional intent" to do so. *Pennhurst II, supra*, 104 S.Ct., at 907. Thus, three questions arise with respect to each federal statute asserted by Plaintiffs: (1) does the statute create a private cause of action; (2) was the statute enacted pursuant to the enforcement powers of Congress under section 5 of the Fourteenth Amendment; and (3) if so, did Congress intend to abrogate the Eleventh Amendment sovereign immunity?

■■■ Section 1983 is Plaintiffs' main vehicle for establishing jurisdiction and vindicating the alleged deprivation of federally protected rights. Plaintiffs seek damages through § 1983 to redress the deprivation, under color of state law, of rights accorded to them by the laws of the United States and the First, Fourth, Eighth, Ninth and Fourteenth Amendments to the Federal Constitution. Courts have long recognized that 42 U.S.C. § 1983 was enacted pursuant to Congress' enforcement powers under the Fourteenth Amendment and creates a private cause of action. However, the Supreme Court has definitively stated that § 1983 does not abrogate a State's Eleventh Amendment sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979). Therefore, this Court need not reach the difficult issue of whether Plaintiffs' federally protected rights [12] have been infringed by the State of Texas. It is clear that all of their § 1983 claims seek to impose a liability which must be paid from public funds in the state treasury and are barred by Eleventh Amendment immunity from being asserted against the State of Texas in a federal court.

Although there is no similar pronouncement from the Supreme Court with regard to § 1985, it does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered

---

**12.** The Supreme Court recognized the liberty interests of the involuntarily committed which are substantively protected by the Due Process Clause of the Fourteenth Amendment in *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

and firmly decided to abrogate Eleventh Amendment immunity of the States.

■ The Supreme Court was presented with the question whether States are subject to suit in federal court by litigants seeking retroactive monetary relief under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, in the case of *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). The Court rejected the argument that § 794 abrogated constitutional sovereign immunity and stated that the provisions of the Act "fall far short of expressing an unequivocal congressional intent to abrogate the States' Eleventh Amendment immunity." *Id.,* at 3150. Therefore, it is unnecessary for this Court to consider the first two prongs of the three-prong analysis; the Eleventh Amendment bars a suit against the State on the basis of § 794.

■ The three remaining statutes, i.e., 42 U.S.C. §§ 6010, 6011 and 6063, are part of the Developmentally Disabled Assistance and Bill of Rights Act of 1975. In *Pennhurst State Sch. & Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (Pennhurst I), the Supreme Court held that § 6010 created no substantive rights. *Id.,* 101 S.Ct., at 1536. The Court further stated: "Because we conclude that § 6010 confers no substantive rights, we need not reach the question whether there is a private cause of action under that section or under 42 U.S.C. § 1983 to enforce those rights." *Id.,* 101 S.Ct., at 1545, n. 21. The same is true of the instant case; Plaintiffs fail to satisfy the first prong of the analysis. Therefore, their claim based on § 6010 is barred by the Eleventh Amendment.

Furthermore, after reviewing the purpose of the Act and several provisions therein, including §§ 6011 and 6063, the Court in *Pennhurst I* held that only one provision of the Act, i.e., § 6068, creates a cause of action. *Id.,* 101 S.Ct., at 1538. That section provides a State, whose federal funds have been terminated or reduced by the Secretary of the Department of Health and Human Resources for failure to comply with the provisions of § 6063, with the right to appeal the Secretary's decision to the federal court of appeals. Here,

Plaintiffs seek to recover retroactive monetary relief because of the Fort Worth State School's failure to comply with the terms of §§ 6011 and 6063. Because the Supreme Court has previously decided that there is only one cause of action provided in the Developmentally Disabled Assistance and Bill of Rights Act, and since Plaintiffs do not come under that particular section, it is clear that they have no cause of action against the State under §§ 6011 and 6063.

In sum, Plaintiffs have stated no claims against the State of Texas that are not barred by the Eleventh Amendment. The only remaining issue in regard to State Defendants' motion is whether MHMR, the Fort Worth State School and the officials in their official capacity are cloaked with the State's Eleventh Amendment sovereign immunity.

■ The Eleventh Amendment, enacted to protect state treasuries from suits by individuals, prohibits an award of damages which is in substance against the state. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Because the Eleventh Amendment is informed by principles of federalism, *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 2573–2574, 57 L.Ed.2d 522 (1978); it has been interpreted to restrict federal court jurisdiction in those cases in which the state is the real, substantial party in interest. *Lincoln County v. Luning,* 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890). For this reason, Eleventh Amendment immunity cannot be circumvented by suing a governmental unit or official, which stands in the shoes of the state. *Edelman v. Jordan, supra,* 94 S.Ct., at 1358; *Downing v. Williams,* 624 F.2d 612, 625 (5th Cir.1980). In determining whether an action against a governmental unit or an individual in his official capacity is really against the state, a court must examine the relationship and duties created by state law as to the institution or individual official involved to see whether Eleventh Amendment immunity exists. *Hander v. San Jacinto Junior College,* 519 F.2d 273 (5th Cir.1975). Although a federal court must look to state law to determine the true character of the relationship between the state and the institu-

tion or official, the final determination is a question of federal law. *Id.*, at 279. If it is determined that MHMR is an "arm of the state" or its "alter ego", then the suit against MHMR, as well as the individual officials, is barred by the Eleventh Amendment because the action is in essence one for the recovery of money from the state. *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Therefore, it is necessary to determine whether MHMR is an arm of the State of Texas.

■ In *Sessions v. Rusk State Hospital*, 648 F.2d 1066 (5th Cir.1981), the Fifth Circuit concluded that Rusk State Hospital is an arm of the state for the purpose of Eleventh Amendment immunity. The Court reached this conclusion on the basis of the trial court's uncontested finding that Rusk State Hospital is a state institution under the exclusive control of MHMR. *See* Tex.Rev.Civ.Stat. article 5547–202, § 2.01. This holding necessarily implies that MHMR is an arm of the State of Texas, and subsequent Fifth Circuit cases have approvingly cited the *Sessions* court for this proposition. *See Jacintoport Corp. v. Gr. Baton Rouge Port Com'n*, 762 F.2d 435, 438 (5th Cir.1985); *Laje v. R.E. Thomason General Hospital*, 665 F.2d 724, 727 (5th Cir.1982). Like Rusk State Hospital, the Fort Worth State School is also a state institution under the exclusive control of MHMR. Therefore, the Court is compelled, under the doctrine of *stare decisis*, to hold that MHMR, the Fort Worth State School and the officials in their official capacity are only nominal defendants, and that the State of Texas is the real, substantial party in interest. It also follows that these defendants derive Eleventh Amendment immunity to the same extent that it is enjoyed by the State.

## QUALIFIED IMMUNITY DEFENSES

Defendants Jaylon Fincannon, Arren C. Buchannan, M.D. and Norman Read, M.D. have been sued individually for acts within the course and scope of their employment or official duties, and in furtherance of the duties of their office or employment. These Defendants have asserted the qualified "good faith" immunity defense.

It has long been held that governmental officials are entitled to some sort of immunity from damages. "As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). The recognition of a qualified immunity defense reflects an attempt to balance competing values: the importance of a damages remedy to protect the rights of citizens, and the need to protect officials who are required to exercise their discretion, and the related public interest in encouraging the vigorous exercise of official authority. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 2909–2910, 57 L.Ed.2d 895 (1978). The qualified immunity defense has been identified as the best attainable accommodation of these competing values because it permits "insubstantial lawsuits [to] be quickly terminated." *Id.*, 98 S.Ct., at 2911–2912.

■ The standard by which this Court is guided in making its determination of whether these Defendants are entitled to qualified immunity is set forth in the case of *Harlow v. Fitzgerald, supra.* There the Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*, 102 S.Ct., at 2738. Moreover, litigants invoking 42 U.S.C. § 1983 are required to state specific facts in support of their claims, which, if proved, would overcome the defense of qualified immunity. *Elliott v. Perez*, 751 F.2d 1472 (5th Cir.1985).

The resolution, then, of the qualified immunity defenses raised by these individually named Defendants turns initially on whether the law was clearly established at the time the action in question occurred.[13]

---

13. Much of the complaint alleges negligent conduct as a basis for liability. In *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court held "that the Due Process Clause is not implicated by a *negligent* act of an official causing unintended loss or injury to life,

Thus, if the Court determines that the law was not clearly established when the administrative official acted, then the analysis ends there. On the other hand, if the Court determines that the law was clearly established at the time the action occurred, the second part of the *Harlow* analysis becomes relevant. In such a case, the second part of the analysis requires the public official to show that, because of extraordinary circumstances, "he neither knew nor should have known of the relevant legal standard." *Harlow v. Fitzgerald, supra,* 102 S.Ct., at 2739. *See, e.g., Barnett v. Housing Authority of the City of Atlanta,* 707 F.2d 1571 (11th Cir.1983) (even though the constitutional violation was well settled, the court remanded to allow defendants to show extraordinary circumstances).

Within this framework of qualified immunity the Court will now consider the federal rights which Plaintiffs allege were clearly established and which Plaintiffs allege these individual Defendants violated while acting within the course of their official duties. It is alleged that Jessie Gail Clift's freedom from state-imposed segregation under the Equal Protection Clause of the Fourteenth Amendment was violated; that her liberty, privacy, dignity, and freedom from harm were violated under the First, Fourth, Eighth, Ninth and Fourteenth Amendments; that her rights to speak, read, communicate, associate and assemble under the First Amendment were violated; that she was denied food in adequate quantity; and that her right to habilitation in the least restrictive environment under the Due Process Clause was violated.

### EQUAL PROTECTION CLAIM

The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct which discriminates on the basis of race. Moreover, the applicable legal standard in reviewing this constitutional issue is whether there has been a showing of racially discriminatory purpose. The complaint alleges, in a conclusory fashion, that the decedent's[14] right to equal protection of the laws was violated because of the state-imposed segregation. The Court finds no desegregation cases involving state mental health institutions, but by analogy it draws from school desegregation cases.

 The school desegregation opinions have adhered to the basic equal protection principle that the invidious quality of a law claimed to be racially discriminatory must be traced to a racially discriminatory purpose. The essential element of *de jure* segregation is "a current condition of segregation resulting from intentional state action." *Keyes v. School Dist. No. 1,* 413 U.S. 189, 93 S.Ct. 2686, 2696, 37 L.Ed.2d 548 (1973).

 The complaint is without sufficient facts to support an equal protection claim. The Court is unaware of the decedent's race, what law or official acts are claimed to be invidiously discriminatory, and how the decedent was segregated. This claim fails on the face of its pleading.

### EIGHTH AMENDMENT CLAIM

The complaint alleges that Defendant officials deprived decedent of her rights to liberty, privacy, dignity and freedom from harm, and subjected her to cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the States by the Fourteenth.[15] *See Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). The Eighth Amendment embodies "broad and idealistic con-

liberty or property." *Id.,* 106 S.Ct., at 663 (emphasis original). As previously noted, the Court's federal question jurisdiction has been invoked; therefore, the Court will consider only that complained of conduct which is protected under the Constitution or laws of the United States and actionable under 42 U.S.C. §§ 1983 and 1985.

**14.** The Court expresses no opinion with regard to the appropriate relief available upon the suc-

cessful assertion of an equal protection claim, the standing of Plaintiffs to assert this claim on behalf of themselves or on behalf of the decedent, and the mootness of this claim, since the Court finds that a claim has not been properly stated.

**15.** The Eighth Amendment provides:
"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

cepts of dignity, civilized standards, humanity, and decency ...". *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting *Jackson v. Bishop,* 404 F.2d 571, 579 (8th Cir.1968)).

 In support of Plaintiffs' Eighth Amendment claim it is alleged that, on several occasions prior to her death, and as an incident of her death, Jessie Gail Clift was denied necessary medical attention or was subjected to treatment or procedures not in accordance with accepted medical practice. It is an elementary principle that the government has an obligation to provide medical care for those whom it is punishing by incarceration. *See Estelle v. Gamble, supra,* 97 S.Ct., at 290. Certainly, this obligation extends to those who are civilly committed as well. However, not every claim of inadequate medical treatment, by a person under a state's care and custody, states a violation of the Eighth Amendment. In order to state a cognizable claim, the complaint must allege acts or omissions sufficiently harmful to evidence a state officer's "deliberate indifference" to serious medical needs. *Id.,* 97 S.Ct., at 292.

 With that standard in mind, the Court has considered the factual allegations of the complaint in light of the qualified immunity standard of *Harlow* and the pleading requirements of *Elliott* and concludes that the complaint fails to state an Eighth Amendment claim and that it is insufficient to overcome the qualified immunity defense.

## THE CONSTITUTIONAL STANDARD OF CARE FOR THE MENTALLY RETARDED

 Several of the alleged constitutional deprivations visited upon Jessie Gail Clift by the named individuals call into question the constitutional standard of care imposed on States when they undertake to provide substantive services to the handicapped and mentally retarded. As a general matter, States are under no constitutional duty to provide substantive services within their borders. *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 2459, 73 L.Ed.2d 28 (1984). However, if a State chooses to provide such services, then a duty to provide certain services and care does exist, although even then a State has considerable discretion in determining the nature and scope of its responsibilities. *Ibid.*

*Youngberg* confirmed that there are certain liberty interests which are substantively protected by the Due Process Clause of the Fourteenth Amendment, and that these interests are not extinguished by becoming involuntarily committed. Certainly the voluntarily committed would be entitled to the same protected interests. These substantively protected liberty interests include: the right to adequate food, shelter and clothing; the right to reasonable conditions of safety; and the right to freedom from unreasonable bodily restraints. Furthermore, there is a constitutional right to habilitation, but only to the extent that such habilitation is necessary to avoid unconstitutional infringement of one's rights to safety and freedom from bodily restraints. The *Youngberg* Court stopped short, however, of holding that there is a general constitutional right to habilitation *per se.*

Moreover, the Court held that a decision, if made by a professional, is presumptively valid, and that liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. *Id.,* 102 S.Ct., at 2462. This presumption furthers the policy of limited judicial intervention in the internal operations of institutions such as the Fort Worth State School, where professional judgment necessarily must continuously be exercised as to the needs of its residents.

 It is alleged that Jessie Gail Clift was denied the right to such habilitation as was necessary in order to enable her to speak, read, communicate, associate and assemble. These claims involve qualitative betterment of a retarded person's life, and not habilitation which is necessary to afford safety and freedom from bodily restraint.

 The complaint alleges that Jessie Gail Clift was denied food in adequate

quantity, taste, appearance and nutrient content. However, each of the named Defendants has stated by affidavit that their decisions were at all times based on their best professional judgment. Giving these uncontroverted affidavits a presumption of validity, as indeed the Court must, there is no genuine issue as to any material fact in regard to this claim.

 The complaint alleges that the physical environment to which Jessie Gail Clift was subjected deprived her of a substantively protected right to habilitation in the least restrictive alternative setting. The complaint does not state which federal statute or constitutional provision forms the basis of this alleged federal right. However, whether it is alleged to be either a substantive due process right grounded in the liberty component of the Due Process Clause of the Fourteenth Amendment, or a substantive right under the provisions of 42 U.S.C. § 6010, the result is the same.

 In *Pennhurst I* the Court laid to rest any contention that section 6010 creates substantive rights, leaving no room for doubt that section 6010 may not support a claimed federal right to habilitation in the least restrictive alternative setting. 101 S.Ct., at 1136. Nor does the Federal Constitution confer a right to habilitation in the least restrictive environment. *Lelsz v. Kavanagh,* 807 F.2d 1243, 1251 (5th Cir. 1987); *accord Society for Good Will to Retarded Children v. Cuomo,* 737 F.2d 1239, 1248 (2nd Cir.1984). *Cf. Phillips v. Thompson,* 715 F.2d 365, 368 (no denial of liberty of movement to deny community placement to several hundred higher functioning mentally retarded adults and to place those individuals in institutions; post-*Youngberg* decision). There being no clearly established federal right to habilitation in the least restrictive alternative setting, the individual Defendants' claims of qualified immunity must prevail in that regard.

## CONCLUSION

 All claims against the State of Texas, MHMR, the Fort Worth State School and the officials in their official capacity are barred by the Eleventh Amendment to the United States Constitution. Furthermore, the claims alleged against the named Defendants in their individual capacity are barred by the qualified "good faith" immunity defense.

It is, therefore, ORDERED that Plaintiffs' claims against the State of Texas, the Texas Department of Mental Health and Mental Retardation, the Fort Worth State School, Jaylon Fincannon in his official capacity, Arren C. Buchannan, M.D., in his official capacity and Norman Read, M.D., in his official capacity be, and the same are hereby, DISMISSED without prejudice.

It is further ORDERED that the Motion for Summary Judgment of Individual Defendants, Jaylon Fincannon, Arren C. Buchannan, M.D., and Norman Read, M.D., be, and the same is hereby, GRANTED.

It is the further ORDER of this Court that Plaintiffs' pendent state-law claims be, and the same are hereby, DISMISSED without prejudice.