Jimmy Darrell **HANDLEY**, Individually and as Next Friend of Gerald William Handley and April Marie Handley, Minors, and Elaine Montes, Plaintiffs,

v.

**CITY OF SEAGOVILLE, TEXAS, Defendant.**

**Civ. A. No. 3-91-1628-H.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 13, 1992.

James R. Tucker, Godwin, Carlton & Maxwell, Dallas, Tex., for plaintiffs.

Joe C. Tooley and Jeffrey H. Rasonsky, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are the City of Seagoville's Motion to Dismiss for Failure to State a Claim upon which Relief Can Be Granted, filed December 19, 1991; the Response thereto, filed January 7, 1992 on behalf of Plaintiffs Jimmy Handley, Gerald Handley, April Handley, and Elaine Montes ("the Handleys"); and Seagoville's Reply, filed January 9, 1992.

### Background

The Court's Memorandum Opinion and Order, filed November 15, 1991 ("November 15 Order"), outlines the sad and tragic facts of this case and its pertinent procedural history in detail. The Court need not repeat the litany here. Instead, the Court notes that this case was removed to this Court from the 193rd Judicial District Court of Dallas County, Texas, on August 13, 1991, and that the claims at issue revolve around Seagoville's failure to provide ambulance services to Sharon Handley on September 3, 1990, and the allegation that Sharon Handley died as a result.

By the November 15 Order, the Court, in the midst of the parties' dispute over a prior Seagoville Motion to Dismiss for Failure to State a Claim, filed October 10, 1991, allowed the Handleys to amend their Fifth Amended Original Complaint to more definitively state their claims. The Handleys did so, filing their Sixth Amended Original Complaint ("Sixth Amended Complaint") on December 4, 1991.

That complaint asserts three causes of action: negligence, breach of contract, and a 42 U.S.C. § 1983 claim based on violations of Sharon Handley's Constitutional rights. In the present Motion to Dismiss, Seagoville invokes Rule 12(b)(6), Fed.R.Civ. P., against all three.

Seagoville also argues that the Handleys lack standing to bring a section 1983 claim based on the deceased Sharon Handley's rights. In support, Seagoville presents evidence that Jimmy Handley has not been designated as a representative of Sharon Handley's estate. *See infra* note 5.

While the distinction has no effect on the arguments considered by the Court, the actual question is not one of standing, but whether the Handleys have a "cause of action" under section 1983.[1] The Court considers Seagoville's standing arguments

---

1. "(C)ause of action is a question of whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court." *Davis v. Passman,* 442 U.S. 228, 240 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979) (emphasis omitted). Standing, on the other hand, is the subsequent question of "whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction." *Id.* at 239–40 n. 18, 99 S.Ct. at 2273–74 n. 18 (emphasis omitted); *see also Dohaish v. Tooley,* 670 F.2d 934 (10th Cir.) (applying the distinction to survival actions brought under section 1983), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The Court finds the distinction of little practical value in this case, but adheres to it nonetheless. That said, standing lies with Sharon Handley's estate and will transfer to Jimmy Handley if he establishes a cause of action as Sharon Handley' heir or the representative of her estate. *See infra* pp. 1269–1270.

as cause of action arguments and necessarily addresses them before the Rule 12(b)(6) questions presented.[2]

#### The Cause of Action Under Section 1983

In its November 15 Order, the Court disposed of cause of action arguments similar to those now presented. Portions of the November 15 Order bear repeating here, but the parties' current offerings also propel the Court to a new examination.

■ Section 1983 is not a beacon of clarity when it comes to questions of who may bring a cause of action under its provisions.[3] As in this case, "when the constitutional violation has resulted in death, § 1983 does not specify whether the cause of action it creates survives the death, who are the injured parties, the nature of the claims that may be pursued or who may pursue them, or the types of damages recoverable." *Berry v. City of Muskogee,* 900 F.2d 1489, 1502 (10th Cir.1990).

As a result, in such cases, the Court must look to state survival statutes to determine who may bring a section 1983 claim. *See Berry v. City of Muskogee,* 900 F.2d at 1506–07; *Jaco v. Bloechle,* 739 F.2d 239, 241–42 (6th Cir.1984); *see also Robertson v. Wegmann,* 436 U.S. 584, 587–89, 98 S.Ct. 1991, 1993–95, 56 L.Ed.2d 554 (1978) (holding that survival actions under section 1983 are governed by 42 U.S.C. § 1988, which directs the courts to look to the law of the forum state). In other words, "(t)he remedy should be a survival action, brought by the estate of the deceased victim, in accord with § 1983's express statement that the liability is 'to the party injured.'" *Berry v. City of Muskogee,* 900 F.2d at 1506–07 (quoting 42 U.S.C. § 1983).

■ For the purposes of this case, the Texas Survival Statute provides that, "(a) personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." Tex.Civ. Prac. & Rem.Code Ann. § 71.021(b) (West 1986). Pursuant to this provision, Jimmy Handley consistently has claimed the right to pursue the section 1983 claim as a legal representative of Sharon Handley's estate. The Handleys' Sixth Amended Complaint states that, "Jimmy Handley is the representative of the Estate of Sharon Handley, and is entitled to bring this lawsuit pursuant to Section 71.021 of the Texas Civil Practice and Remedies Code." Sixth Amended Complaint at ¶ 1.[4] It is uncontro-

---

2. Although Seagoville presents the restyled cause of action arguments, like all others, pursuant to Rule 12(b)(6), those arguments and Seagoville's "supporting particulars," including affidavits, *see infra* note 5, are more appropriately considered pursuant to Rule 9(a), Fed. R.Civ.P. Otherwise, the Court would be required to consider them as a motion for summary judgment pursuant to Rule 56, Fed. R.Civ.P. *See* Rule 12(b), Fed.R.Civ.P. It is pursuant to Rule 9(a) that the Court considers the cause of action arguments now.

3. It reads as follows:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C.A. § 1983 (West 1981).

4. The Handleys' Fifth Amended Original Complaint, which is representative of its forerun-

ners, alleges that, "Plaintiffs are all beneficiaries entitled to bring this lawsuit pursuant to §§ 71.004 and 71.021 of the Texas Civil Practice and Remedies Code." Fifth Amended Original Complaint, filed September 25, 1991 ("Fifth Amended Complaint"), at ¶ 1. When last confronted with Seagoville's Motion to Dismiss the section 1983 claim for lack of standing/cause of action, the Handleys declared that, "(t)he substance of Plaintiffs' (Fifth Amended) Complaint clearly demonstrates that Sharon Handley's Section 1983 claim was made pursuant to Section 71.021 by Jimmy Darrell Handley, *the legal representative of Sharon Handley's estate.*" Plaintiffs' Response (to Defendant's Motion to Dismiss), filed October 29, 1991, at ¶ 13 (emphasis added). The Handleys added that, *"(a)s the legal representative* of Sharon Handley's estate, Jimmy Darrell Handley, who has been a party to this lawsuit since its inception, was by necessity the party asserting Sharon Handley's survival cause of action for violation of her civil rights." *Id.* (citation omitted) (emphasis added). The Court and Defendant Seagoville relied on these statements in concluding that Handleys were arguing that Jimmy Handley was a legal representative of Sharon Handley's estate, such as the executor or an administrator.

verted that none of the other plaintiffs is a legal representative of Sharon Handley's estate. *See* Affidavits of No Records, Seagoville's December 19, 1991, Motion to Dismiss, Exhibits A and B.

Now, however, in their January 7, 1992, filing, the Handleys suddenly claim that Jimmy Handley is *not* the legal representative of Sharon Handley's estate, but simply an heir who is entitled to bring the section 1983 suit pursuant to the Texas Survival Statute because no legal representative of Sharon Handley's estate exists.[5] *See* Response at ¶¶ 9–11.

A claim as the legal representative of an estate is indeed different from one as an heir. *See Frazier v. Wynn,* 472 S.W.2d 750, 752 (Tex.1971); *see also Clift by Clift v. Fincannon,* 657 F.Supp. 1535, 1541 (E.D.Tex.1987) (referring to heir and legal representative claims separately); *Johnson v. Holly Farms of Tex., Inc.,* 731 S.W.2d 641, 647 (Tex.App.—Amarillo 1987, no writ) (noting that party can sue solely as an heir); *Amos v. Central Freight Lines, Inc.,* 575 S.W.2d 636, 638–39 (Tex.App.—Houston [1st. Dist.] 1978, no writ) (discussing a claim made by heirs under the prior version of the Texas Survival Statute, Tex. Civ.Stat.Ann. art. 5525).

Nevertheless, based on the pleadings and instruments before it, the Court cannot conclude that Jimmy Handley is not an heir of Sharon Handley for the purposes of the Texas Survival Statute. *See* Tex.Civ.Prac. & Rem.Code Ann. § 71.021(b). Indeed, the Texas Probate Code provides that, " '(h)eirs' denote those persons, including the surviving spouse, who are entitled under the statutes of descent and distribution to the estate of a decedent who dies intestate." Tex.Prob.Code Ann. § 3(*o*) (West 1980).

■ Seagoville takes the position that only the legal representatives of Sharon Handley's estate, and not the heirs involved, may assert Sharon Handley's rights

under section 1983. This view ignores the plain language of section 71.021 of the Texas Survival Statute, which allows heirs to bring a survival action. In addition, the cases relied on by Seagoville for its position, *Coon v. Ledbetter,* 780 F.2d 1158 (5th Cir.1986), and *Dohaish v. Tooley,* 670 F.2d 934 (10th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982), do not weaken section 71.021's authority. While the courts in both *Coon* and *Dohaish* determined that relatives generally may not bring section 1983 actions, *Coon* did not involve a survival action and, therefore, understandably ceased its cause of action inquiry with analysis of whether the rights asserted therein were personal, *see* 780 F.2d at 1160 (citing *Dohaish* ), and the court in *Dohaish* employed the appropriate deference to the pertinent state survival statute. *See* 670 F.2d at 937. The Court concludes that, pursuant to section 71.021 of the Texas Survival Statute, heirs have a cause of action under section 1983.

In this case, based on the foregoing authorities, pleadings, and instruments, Jimmy Handley has sufficiently alleged his status as an heir of Sharon Handley to pursue the section 1983 claim. *See Johnson v. Holly Farms of Tex., Inc.,* 731 S.W.2d at 647. Seagoville's request to dismiss the section 1983 claim for lack of standing/improper cause of action is DENIED.

### The Handleys' Claims

The Court turns now to the Handleys' statement of their claims.

### Rule 12(b)(6) Standards of Inquiry

It is well settled that, in determining whether to grant a Rule 12(b)(6) motion, the Court focuses on the allegations in the Complaint. *See Mahone v. Addicks Util. Dist.,* 836 F.2d 921, 936 (5th Cir.1988). "On a motion to dismiss, the well pleaded allegations of fact are taken as true." *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974) (citing

---

5. Likewise, according to affidavits provided by Seagoville, there are no records establishing that Jimmy Handley is the executor, administrator, or legal representative of Sharon Handley's estate. *See* Affidavits of No Records, Seago-

ville's December 19, 1991 Motion to Dismiss, Exhibits A and B; *see also* Tex.Prob.Code Ann. § 3(aa) (West 1980) (defining "representative" as an executor, administrator, or guardian and their successors).

*Campbell v. Beto,* 460 F.2d 765, 766 (5th Cir.1972)). On the other hand, conclusory allegations and unwarranted deductions of fact are not admitted as true. *See id.* (citing *Ward v. Hudnell,* 366 F.2d 247, 249 (5th Cir.1966)).

The Supreme Court has addressed the standards applied to a Rule 12(b)(6) motion, stating that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (explaining that, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). Although "motions to dismiss for failure to state a claim are disfavored by the law," *Mahone v. Addicks Util. Dist.,* 836 F.2d at 926, "there are times when a court *should* exercise its power to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.* at 927 (emphasis in original).

### The Section 1983 Claim

Seagoville contends that the section 1983 claim is barred by the pertinent statute of limitations and that the Handleys have failed to plead the elements of the section 1983 claim with sufficient particularity. The Court, however, necessarily begins its inquiry into the statement of the section 1983 claim with analysis of the federal right invoked. *See Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692–93, 61 L.Ed.2d 433 (1979). The inquiry ends there, as well.

To state an actionable section 1983 claim, it is axiomatic that a plaintiff must allege the deprivation of a right secured by the Constitution or laws of the United States. *See id.; Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir.1987) (citations omitted); *Whitton v. City of Houston,* 676 F.Supp. 137, 139 (S.D.Tex.1987) (citations omitted). In the instant case, the Court's November 15 Order noted that the Handleys' Fifth Amended Complaint failed to clearly state which of Sharon Handley's federal rights were violated. *See* November 15 Order at 6 n. 2. Apparently in response to that Order, the Handleys' Sixth Amended Complaint avers that,

> (b)y failing and refusing to provide Sharon Handley with ambulance service when needed, Seagoville deprived Sharon Handley's rights under the constitutions and laws of the United States and the State of Texas. Specifically, Seagoville denied Sharon Handley *life without due process of law in violation of the 14th Amendment to the United States Constitution* and Article 1, Section 19 of the Texas Constitution.

Sixth Amended Complaint at ¶ 10 (emphasis added).

██ Violations of state constitutional rights do not, of course, form a basis for section 1983 claims, *see, e.g., Whitton v. City of Houston,* 676 F.Supp. at 139 (stressing the federal right requirement), and the Handleys' Texas Constitution claims will not provide a basis here. The issue, therefore, is whether the Handleys have stated a claim for violation of rights secured by the due process clause of the Fourteenth Amendment.[6] No other federal right is claimed.

Courts have rejected the Fourteenth Amendment's due process clause as a source of a state's duty to provide services.[7] Notably, the Eleventh Circuit faced a case similar to the one at bar in *Wideman v. Shallowford Community Hosp., Inc.*

---

6. That oft-quoted provision dictates that no state shall "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. All intimations to the "due process clause" in this Memorandum Opinion and Order refer to the due process clause of the Fourteenth Amendment unless otherwise specified.

7. This is also true of the Fifth Amendment's due process clause. *See, e.g., Andrews v. Wilkins,* 934 F.2d 1267, 1269–71 (D.C.Cir.1991) (refusing to impose duty to rescue on police officer based on the due process clause of the Fifth Amendment).

There, Wideman, a woman four months pregnant, requested county-run emergency ambulance service after experiencing abdominal labor-like pains. When the ambulance arrived, Wideman asked that she be taken to the private hospital where her doctor was waiting. The ambulance personnel refused the request and took Wideman to a public hospital instead. After a substantial delay, Wideman was transferred to the private hospital and her physician's care. At that point, however, it was too late to stop Wideman's labor, and the premature baby boy she carried died four hours after he was delivered. 826 F.2d at 1031.

Wideman and her husband, claimed, *inter alia,* violations of their federal constitutional right to essential medical treatment and care pursuant to section 1983.[8] *Id.* On appeal from the district court's denial of various motions, the Eleventh Circuit analyzed this claim under the due process clause of the Fourteenth Amendment[9] and concluded that no right to medical services or care could be derived from that provision. *Id.* at 1032–34.

The Seventh Circuit reached a similar result for the same basic reasons in *Archie v. City of Racine,* 847 F.2d 1211 (1988) (*en banc*), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). In that case, much like this one, a city emergency ambulance dispatcher failed to send an ambulance to a woman, Rena DeLacy, after DeLacy's friend had called requesting rescue assistance, and, as a result, DeLacy died.

The plaintiffs brought a section 1983 claim based on the due process clause, and, after the district court entered judgment for the city, the Seventh Circuit addressed the merits of that claim. 847 F.2d at 1213–14. The court determined that the Constitution, by itself, does not create a right to have the state provide effective rescue services to those in danger. *Id.* at 1220.

■ With the holdings of *Wideman* and *Archie* in mind, the Court concludes that the due process clause of the Fourteenth Amendment does not provide a right to state-provided emergency ambulance service.[10] As a result, the Handleys' section 1983 claim is really simply their negligence and breach of contract claims reworded. The disguise, no matter how well crafted, cannot create a federal right where none exists.

The Handleys and Seagoville make much of the municipal policy and custom arguments present in so many section 1983 cases. *See generally Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 691, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978) (establishing the basic requirements for municipality liability under section 1983); *Rodriguez v. Avita,* 871 F.2d 552, 554 (5th Cir.1989) (discussing them further). Even if Seagoville had a policy of denying ambulance services to

---

**8.** Wideman sued in her individual capacity, her capacity as mother of the deceased child, and as administratrix of the estate of the child. *See* 826 F.2d at 1030.

**9.** The court explained that,

we can discern no *general* right, based upon either the Constitution or federal statutes, to the provision of medical treatment and services by a state or municipality. If such a right exists at all, it must derive from the fourteenth amendment's due process clause, which forbids a state to deprive anyone of life, liberty or property without due process of law.

826 F.2d at 1033 (emphasis added). *See also infra* note 10 (explaining the circumstances in which a right to medical care would exist).

**10.** As *Wideman* notes, the state might have a constitutional duty to provide medical care and

other services to individuals who are in a "special custodial or other relationship" with the state. 826 F.2d at 1034; *see Fox v. Custis,* 712 F.2d 84, 88 (4th Cir.1983). The Handleys assert no such relationship here, and it is clear that no such relationship existed. At the point at which ambulance assistance was requested for Sharon Handley, the City of Seagoville had exercised no degree of "coercion, dominion, or restraint" over her. *Whitton v. City of Houston,* 676 F.Supp. at 139. Even more specifically, "preemption of emergency ambulance service" does not create the required special custodial relationship. *Id.; see also Jackson v. Byrne,* 738 F.2d 1443, 1447 (7th Cir.1984) (holding that the city of Chicago had no Fourteenth Amendment duty to provide fire-fighting services to Chicago citizens and, therefore, could not be held liable under section 1983 for failing to provide those services).

those outside its city limits and did so in the manner and means alleged by the Handleys, the Handleys still would have no cause of action under section 1983. Given the absence of a federal right in this case, the Court never reaches the policy and custom inquiry.

There is no federal right involved here, and therefore, the Handleys can prove no set of facts in support of their section 1983 claim that would entitle them to relief.

Seagoville's Motion to Dismiss the section 1983 claim is GRANTED.

*State Law Claims*

By its Order filed October 18, 1991, the Court ruled that removal of the section 1983 claim was proper pursuant to 28 U.S.C. § 1441(a) but declined to pass judgment on whether the state law claims in this case would be subject to remand should the section 1983 claim be dismissed or disposed of through summary judgment. *See* October 18, 1991 Order at 8. The Court *sua sponte* considers the issue of remand now. *See* 28 U.S.C.A. § 1447(c) (West 1973 & Supp.1991).

Only the state law negligence and breach of contract claims remain before the Court. The Court will not now exercise its supplemental jurisdiction over those claims. *See id.;* 28 U.S.C.A. § 1367(c)(3) (West Supp. 1991). The Court also concludes that the interests of justice would best be served by remanding these claims to state court.

Accordingly, the Court does not reach Seagoville's Motion to Dismiss with respect to the negligence and breach of contract claims.

### Conclusion

The section 1983 claim is DISMISSED. The remaining claims are REMANDED to the 193rd Judicial District Court of Dallas County from whence they came.

SO ORDERED.