**Duane Vernon KELSON and Eleanor T. Kelson, Plaintiffs-Appellants.**

v.

**The CITY OF SPRINGFIELD; Jerry Smith, an individual; Springfield School District No. 19; and Ronald Schiessel, an individual, Defendants-Appellees.**

No. 84–4403.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 1985.

Decided Aug. 2, 1985.

Charles O. Porter, Eugene, Or., for plaintiffs-appellants.

Donald A. Loomis, Loomis, Tomlinson & Kurtz, Richard W. Butler, Atherly, Butler & Burgott, Eugene, Or., for defendants-appellees.

Before BROWNING and ALARCON, Circuit Judges, and WILKINS,* District Judge.

ALARCON, Circuit Judge:

Duane and Eleanor Kelson (the Kelsons) appeal from the district court's dismissal of their complaint alleging a violation of 42 U.S.C. § 1983 and a pendent state cause of action for negligence arising out of the suicide of their fourteen year-old son, Brian Kelson. This appeal requires us to resolve the narrow question whether parents possess a constitutionally protected liberty interest in the companionship and society of their child, deprivation of which is actionable under section 1983. Because we conclude that a cognizable liberty interest does exist in the circumstances of this case, we reverse.

I

PERTINENT FACTS AND
PROCEDURAL HISTORY

On the morning of March 15, 1982, Brian confronted a teacher in his classroom, brandishing a .38 caliber revolver and demanding that the teacher place the coins in his desk drawer on the desk top. The

---

* Honorable Philip C. Wilkins, Senior United States District Judge for the Eastern District of California, sitting by designation.

teacher complied, and then persuaded Brian to accompany him to an empty room where the vice principal, Ronald Schiessel (Schiessel), was waiting. Brian showed Schiessel a suicide note. During this time, Brian kept the handgun in the waistband of his trousers. Although Brian asked to talk to his favorite teacher, he was not permitted to do so.

Meanwhile, school officials called the Springfield Police Department. The police in turn called the Kelsons to notify them of the situation. As Brian and Schiessel left the empty room on their way to the vice principal's office, they were confronted by Officer Jerry Smith (Smith). Smith informed Brian that he was "in trouble with the law." Five minutes later Brian left Schiessel, entered the boys' restroom and shot himself. Brian died later that morning.

The Kelsons filed a complaint under 42 U.S.C. § 1983 alleging violations of their fundamental parental rights guaranteed by the Ninth Amendment without the due process required by the Fifth and Fourteenth Amendments, and violations of their right to association with their son guaranteed by the First Amendment without the due process to which they were entitled under the Fourteenth Amendment.[1] The complaint also contains a pendent state cause of action for negligence arising out of the same facts.

The City of Springfield (the City) and Smith moved to dismiss the Kelsons' complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Magistrate Hogan recommended granting the motion and suggested that the court on its own motion

dismiss the action against Springfield School District (the School District) and Schiessel. Hogan concluded that parents have no constitutionally protected right to the companionship and society of their children and that even if such a right does exist, the defendants' alleged actions did not deprive the Kelsons of their parental rights. After a *de novo* review of the file, the district court adopted the Magistrate's Findings and Recommendations and dismissed the complaint as to all defendants.

## II

### EXISTENCE OF A FUNDAMENTAL PARENTAL RIGHT TO THE COMPANIONSHIP AND SOCIETY OF A CHILD

A dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a ruling on a question of law and is subject to *de novo* review. *Guillory v. County of Orange,* 731 F.2d 1379, 1381 (9th Cir.1984). In reviewing such a dismissal, we must accept all material allegations in the complaint as true and construe them in the light most favorable to the appellant. *North Star International v. Arizona Corporation Commission,* 720 F.2d 578, 580 (9th Cir.1983). Dismissal for failure to state a claim is proper only if it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved. *Las Vegas v. Clark County,* 755 F.2d 697, 701 (9th Cir.1985).

The district court's conclusion that parents do not possess a constitutionally protected interest in the companionship and society of their children is erroneous.[2]

1. The Kelsons' complaint does not purport to allege any direct constitutional claims; rather, it alleges a section 1983 action as a vehicle for redress of alleged violations of constitutionally protected rights without due process of law. *See Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 2432, 85 L.Ed.2d 791 (1985) (section 1983 does not create substantive rights, but merely provides remedies for deprivations of rights established elsewhere).

2. Appellees construe the complaint as alleging a violation of *Brian Kelson's* civil rights—a loss of *life* without due process of law—and argue that

the Kelsons lack standing to assert the rights of their son. On the contrary, the complaint alleges only a deprivation of a *liberty* right—the right to associate with one's child. The Kelsons do not sue in their representative capacity on behalf of Brian's estate, nor do they argue that their familial relationship affords them the right to sue on his behalf. Instead, they assert a violation of *their parental rights* and seek damages to compensate them for loss of their son's companionship and for their own mental distress. Therefore, the survivability of a civil rights action is not at issue in the instant case.

This court has previously held that such a liberty interest exists and is cognizable under section 1983. In *Morrison v. Jones*, 607 F.2d 1269 (9th Cir.1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980), county officials transported the California plaintiff's son, a German alien and ward of the state, to Germany on the grounds that the plaintiff was incapable of providing the special care which her mentally ill son required. Plaintiff brought a section 1983 action alleging a deprivation of her parental rights without due process of law. The district court granted summary judgment for the County. We reversed, holding that the parent-child relationship is constitutionally protected and that governmental interference with it gives rise to a section 1983 action for damages. *Id.* at 1275. We stated:

At this preliminary stage of the proceedings, we cannot say that [plaintiff] has failed to state a claim for relief based upon her constitutionally secured rights to procedural due process of law and her substantive familial rights that have long been considered the 'basic civil rights of man.' 'The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment'.

*Id.* at 1275–76 (citations omitted).

The Supreme Court has repeatedly reaffirmed the existence of a constitutional right to the maintenance of a parent-child relationship. In *Little v. Streater*, 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981), the Court held that an indigent defendant in a paternity proceeding brought by the State has a Fourteenth Amendment due process right to receive blood grouping tests. *Id.* at 17, 101 S.Ct. 2211. The Court stressed the importance of familial bonds and reasoned that their imposition by the state (via a paternity suit) demands procedural fairness. *Id.* at 13, 101 S.Ct. at 2209.

In *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the Court held that due process must be afforded to a parent prior to state termination of her parental status on grounds of unfitness. *Id.* at 27, 101 S.Ct. at 2159. The Court stated:

This Court's decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to 'the companionship, care, custody, and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' . . . . Here the State has sought not simply to infringe upon that interest, but to end it. If the State prevails, it will have worked a unique kind of deprivation. . . . A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one.

*Id.* (footnote omitted) (citations omitted).

Finally, in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Court held that natural parents have a constitutionally protected liberty interest in the care, custody and management of their child which entitles them to due process at a state-initiated parental rights termination proceeding. *Id.* at 752–57, 102 S.Ct. at 1394–97. The Court noted that its decisions in *Lassiter* and *Streater*, among others, rendered beyond dispute the proposition that parents have a fundamental liberty interest in maintaining a relationship with their children which is protected by the Fourteenth Amendment. *Id.* at 753, 102 S.Ct. at 1394.

Several federal appellate courts have recognized this right in the context of a killing of a child by a state agent. *See, e.g., Bell v. City of Milwaukee*, 746 F.2d 1205, 1242–45 (7th Cir.1984) (parents have constitutionally protected liberty interest in continued association with their children and may re-

*See Morrison v. Jones*, 607 F.2d 1269, 1275 (9th Cir.1979) (contention that mother does not have standing to sue because she is merely asserting the rights of her child is frivolous; defendant's alleged actions unquestionably caused injury to her relationship with her son, which is protected by the Constitution), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980).

cover under section 1983 for killing of their son by police officer); *Mattis v. Schnarr*, 502 F.2d 588, 593–95 (8th Cir.1976) (father whose son was shot and killed while attempting to escape arrest had a constitutionally protected liberty interest under the due process clause of Fourteenth Amendment which was cognizable under section 1983).

Appellees contend that parents have no constitutionally protected rights to the companionship and protection of their children, relying upon two cases from the District of Colorado, *White v. Talboys*, 573 F.Supp. 49 (D.Colo.1983) (parents' section 1983 claim to recover damages for shooting of their son by police officer dismissed because right to continued life of offspring is not guaranteed by Constitution) and *Jackson v. Marsh*, 551 F.Supp. 1091 (D.Colo.1982) (same), and a Tenth Circuit case, *Dohaish v. Tooley*, 670 F.2d 934 (10th Cir.1982) (father has no recognized right to continued life of his son; therefore, he cannot maintain section 1983 claim in his own behalf for refusal to prosecute his son's killer), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1980).[3] These cases hold that there is no constitutionally protected parental right to be free from

governmental interference in the parent-child relationship. *White*, 573 F.Supp. at 51; *Jackson*, 551 F.Supp. at 1094; *Dohaish*, 670 F.2d at 937. Because the reasoning in these cases conflicts with both Supreme Court precedent and this court's holding in *Morrison*, we decline to accept appellees' invitation to follow them.[4]

In short, existing Supreme Court and Ninth Circuit precedent establish that a parent has a constitutionally protected liberty interest in the companionship and society of his or her child. The state's interference with that liberty interest without due process of law is remediable under section 1983. The district court erred in determining that the Kelsons did not allege a deprivation of a constitutionally protected liberty interest.

### III

### LIABILITY OF INSTITUTIONAL APPELLEES

Because the district court concluded at a threshold level that the Kelsons had no constitutionally protected interest in the companionship and society of their son, it did not consider whether the Kelsons' com-

---

**3.** *Dohaish* is distinguishable on its facts. In *Dohaish*, the section 1983 claim was not based upon termination of the parent-child relationship through death of the child at the hands of a state actor, but upon the state's refusal to prosecute.

**4.** Moreover, a more recent case from the District of Colorado is to the contrary. In *Myres v. Rask*, 602 F.Supp. 210 (D.Colo.1985), parents of a child killed during a struggle with police officers brought an action under section 1983 for violation of their constitutional right to family association. The district court denied a motion to dismiss, refusing to follow *White* and *Jackson* and adopting instead the rationale of the Eighth Circuit in *Mattis v. Schnarr* and the Wisconsin District Court in *Bell v. City of Milwaukee* (later affirmed by the Seventh Circuit). The court observed:

> It would be ironic indeed to recognize, on the one hand, the constitutional rights to marry, *Loving v. Virginia, supra* [388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) ], to procreate, *Skinner v. Oklahoma, supra* [316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) ], to supervise the upbringing of children, *Pierce v. Society of Sisters, supra* [268 U.S. 510, 45 S.Ct. 571, 69

L.Ed. 1070 (1925) ], *Prince v. Massachusetts, supra* [321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) ], to retain custody of one's illegitimate children, *Stanley v. Illinois, supra* [405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1977) ], and to live in the same residence with one's 'family,' *Moore v. East Cleveland, supra* [431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) ], but on the other hand, to deny parents constitutional protection for the continued life of their child. State action that wrongfully kills one's child certainly interferes with fruition and fulfillment of the fundamental right to procreate. A parent cannot benefit from his constitutionally protected rights to supervise the upbringing, retain custody, or live in the same residence with a child if state action unlawfully takes the child's life. To constitutionally protect families from lesser intrusions into family life, yet allow the state to destroy the family relationship altogether, would drastically distort the concept of ordered liberty protected by the Due Process Clause.

> *Id.* at 213.

plaint was deficient in other respects. In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that local governmental entities may be sued under section 1983 only where the alleged deprivation of constitutional rights resulted from the execution or implementation of an official governmental policy. *Id.* at 690, 98 S.Ct. at 2035. Subsequent to the district court's ruling and prior to oral argument on this appeal, the Supreme Court decided the case of *Oklahoma City v. Tuttle*, —— U.S. ——, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). *Tuttle* amplifies the *Monell* standard for the imposition of municipal liability where a policy of inadequate training is alleged.

*Tuttle* involved a wife's section 1983 claim that the City's failure to provide adequate training for its police officers resulted in the shooting of her husband, depriving him of life without due process of law. The Court held that the trial court's jury instruction on the issue of municipal liability was deficient under *Monell* because it did not require proof of a conscious adoption of an institutional policy of inadequate training, or of a causal connection between the policy and the constitutional deprivation. *Id.* —— U.S. at ——, 105 S.Ct. at 2436. The Court indicated doubt on the question, and carefully noted that it "express[ed] no opinion on whether a policy that itself is not unconstitutional, such as the general inadequate training alleged here, can ever meet the policy requirement of *Monell.*" *Id.* at n. 7.

The Kelsons' complaint contains no allegation that the deprivation of their liberty interest resulted from the execution of an official policy, custom, or practice. The complaint does, however, contain allegations that the institutional appellees had a duty to provide suicide prevention training

to their employees, and that they failed to do so. The Kelsons argued in their briefs on appeal that these allegations are sufficient to establish that the institutional defendants had a policy of inadequate training. The district court's erroneous conclusion on the primary issue of the existence of a fundamental parental right to the society and companionship of one's children apparently precluded it from considering whether the Kelsons' complaint is adequate to support institutional liability on a theory of implementation of a policy of inadequate training.[5]

 Although we may affirm a district court's dismissal on any basis fairly supported by the record (*Las Vegas v. Clark County*, 755 F.2d 697, 701 (9th Cir. 1985)), a dismissal under Fed.R.Civ.P. 12(b)(6) should not be affirmed unless it is clear that the complaint could not be saved by any amendment. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 541 (9th Cir.1984). It is not clear from the record that the Kelsons cannot plead facts supporting the existence of an official governmental policy which deprived them of the society of their child. The district court's failure to address this question persuades us that it would be in the interests of justice to remand this matter to give the Kelsons the opportunity to amend their section 1983 claims against the City and the School District to comply with the requirements of *Monell* and *Tuttle*. *See Hirst v. Gertzen*, 676 F.2d 1252, 1264–65 (9th Cir. 1982) (plaintiff afforded opportunity to amend pleadings on remand to allege cognizable section 1983 claim against governmental entities where *Monell* was decided after governmental entities had been dismissed from action). We express no opinion, however, as to whether an actionable policy of inadequate training can be pleaded in the circumstances of the instant case.

---

5. The district court did make an alternative finding that even if the Kelsons did have a constitutionally recognized liberty interest in the society and companionship of their child, there was no constitutionally imposed duty to provide suicide prevention training. This appears to be a mere restatement of the court's

initial conclusion that the Kelsons had no constitutionally protected right. In any event, we view this alternative conclusion as unavoidably tainted by the court's erroneous threshold finding that the Kelsons had no cognizable liberty interest.

## IV

## LIABILITY OF INDIVIDUAL APPELLEES

Because of its erroneous conclusion that the Kelsons had not alleged a constitutionally protected liberty interest, the district court did not address the question whether the Kelsons' claim against the individual appellees is based on a theory that their conduct was a product of state policy, or whether it was predicated upon random unauthorized acts by the two individuals.[6] This distinction may be critical since appellees argue that because the Kelsons' deprivation did not occur pursuant to an official custom or procedure, state tort remedies afford the Kelsons all the process they are due. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (where state employee negligently deprives an individual of property, individual has no cognizable, section 1983 claim if state makes available an adequate post-deprivation remedy).

We decline to speculate upon which theory the Kelsons' present complaint is predicated. In light of our direction to the district court to permit the Kelsons to amend their complaint, such speculation would be advisory and dictum. Therefore, resolution of this question must await the conclusion of the proceedings on remand.

 Finally, we need not reach Schiessel's contention, raised for the first time on appeal, that he is entitled to qualified immunity from suit as a school official. Qualified immunity is an affirmative defense which must be pleaded. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Failure to plead an affirmative defense below results in waiver, and the issue cannot be raised for the first time on appeal. *Santos v. Alaska Bar Association,* 618 F.2d 575, 576–77 (9th

Cir.1980). Nevertheless, in light of our conclusion that the Kelsons should be permitted to file an amended complaint, Schiessel should also be afforded an opportunity to file an answer raising the defense of qualified immunity.[7]

## V

## CONCLUSION

On remand, the district court is directed to afford the Kelsons an opportunity to amend their complaint in light of the Supreme Court's decision in *Tuttle.* The court should also permit Schiessel to file an amended answer raising the affirmative defense of qualified immunity.

The judgment is REVERSED and REMANDED.

---

6. The district court did note that the actions of the individuals were "very reasonable" under the circumstances, and that, as a matter of law, they did not violate the Kelsons' constitutional rights. To the extent that the court's conclusion purports to resolve the factual issue of the reasonableness of conduct, the court erred. *North Star International v. Arizona Corporation Commission,* 720 F.2d 578, 580 (9th Cir.1983) (for

purposes of motion to dismiss, court must assume that all material allegations set out in complaint are true).

7. Appellee Smith has not yet filed an answer. He is, of course, free upon remand to file an answer to the complaint raising this defense.