Estate of Marissa Renee IMRIE; Renee Milligan; individually and in her capacity as successor in interest to Marissa Renee Imrie, Plaintiffs,

v.

GOLDEN GATE BRIDGE, HIGHWAY AND TRANSPORTATION DISTRICT; Board of Directors of the Golden Gate Bridge, Highway and Transportation District; Harold C. Brown; Stanley M. Smith; Maureen Middlebrook; Tom Amiano; Joseph V. Blue; Albert J. Boro; Michael Kerns; James C. Eddie; John E. Fraser; Tony Hall; Maryanne P. Harrison; John Kress; Mark Leno; Michael F. Martini; Robert McDonnell; Barbara Pahr; Leah C. Shahum; Dietrich Stroeh; Leland Yee; and Does 1–5, inclusive, Defendants.

No. C–02–5838 MHP.

United States District Court,
N.D. California.

Sept. 15, 2003.

John Houston Scott, Sheila A. Reid, The Scott Law Firm, San Francisco, CA, Leroy J. Lounibos, Lounibos Lounibos & Tinney, Petaluma, CA, for Plaintiffs.

Kimon Manolius, Hanson, Bridgett, Marcus, Vlahos et al, San Francisco, CA, for Defendants.

## MEMORANDUM AND ORDER

### Re: Defendants' Motion for Judgment on the Pleadings

PATEL, Chief Judge.

Plaintiffs Estate of Marissa Renee Imrie and Renee Mulligan, Imrie's mother, brought this action against the Golden Gate Bridge Highway and Transportation District and related officials (collectively "District"), alleging that the District's failure to erect a suicide barrier on the Golden Gate Bridge violates plaintiffs' federal constitutional rights and state law. Now before the court is defendants' motion for judgment on the pleadings on plaintiffs' federal claims. Having considered the arguments of the parties, and for the reasons set forth below, the court rules as follows.

*BACKGROUND* [1]

On December 17, 2001, fourteen-year-old Marissa Renee Imrie, a resident of Santa Rosa, California, paid $150 to a cabdriver to take her to the Golden Gate Bridge ("Bridge"). Imrie's body was found later that day in the San Francisco Bay, her death ruled by the Marin County Coroner as an apparent suicide from jumping off the Bridge.

More than 1200 persons are known to have leaped to their deaths since the Bridge opened in 1937, making it the number-one suicide spot in the country. The Bridge has a three-and-a-half foot railing on either side. Over the past thirty years, the District has rejected at least eighteen designs for suicide barriers on the grounds that they were either ineffective or not aesthetically pleasing. During this time, approximately 500 persons have committed suicide by jumping off the Bridge. Plaintiffs allege that other deterrent measures—such as regular patrols by Bridge personnel and suicide hotlines—have not meaningfully reduced the rate of suicide.

Most persons contemplating suicide, plaintiffs allege, fixate on committing suicide in a certain way at a certain time. Of 515 persons who were prevented from jumping off the Golden Gate Bridge over a forty-year period, only six percent committed suicide in the next twenty years of their lives. Few of the twenty persons who jumped off the Bridge and survived have again attempted suicide. Suicide barriers erected at other popular sites, such as the Arroyo Seco Bridge and the Cape Cod Canal Bridge, have significantly reduced the number of suicides at those locations.

*LEGAL STANDARD*

After all parties have submitted their pleadings, any party may invoke Federal Rule of Civil Procedure 12(c) and move for judgment on the pleadings as long as consideration of the motion does not delay trial. Fed.R.Civ.P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir.1989). The court accepts all allegations of the nonmoving party as true. *Doleman v. Meiji Mut. Life Ins. Co.,* 727 F.2d 1480, 1482 (9th Cir.1984). If the court reviews matters outside the pleadings, the motion is properly treated as a motion for summary judgment. Fed.R.Civ.P. 12(c).

*DISCUSSION*

█ Plaintiffs claim that defendants' failure to install suicide barriers on the Bridge is a violation of section 1983, 42 U.S.C § 1983, because the failure deprived Imrie of her right to life under the Due Process Clause of the Fourteenth Amendment and Mulligan's right to familial asso-

---

1. All facts are derived from plaintiffs' complaint unless otherwise noted.

ciation with the decedent under the First and Fourteenth Amendments. The District contends that plaintiffs have not alleged a colorable constitutional claim, since it did not have any duty to protect Imrie from her own actions.

■■ To state a claim under section 1983, a plaintiff must show "that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right." *L.W. v. Grubbs.*, 974 F.2d 119, 120 (9th Cir.1992). The threshold question is whether plaintiff has alleged a constitutional deprivation. *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Barring an affirmative finding in this regard, the court should dismiss without further analysis. *See Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365 n. 4 (9th Cir.1998); *see also Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

■■ The Due Process Clause provides that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. Const., amend. XIV, § 1. Historically, this guarantee of due process has been invoked only to remedy deliberate decisions of government officials to deprive a person of life, liberty, or property. *E.g. Davidson v. New Orleans*, 96 U.S. 97, 24 L.Ed. 616 (1877) (assessment of real estate); *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) (stomach pumping); *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (suspension of driver's license); *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (paddling student); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (intentional destruction of inmate's property); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir.1997) (death caused by malicious police action). The Supreme Court has consistently been unwilling to expand substantive due process beyond these affirmative governmental acts, *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), a reticence which comports with the purpose of the Due Process Clause: to prevent the government "from abusing [its] power, or employing it as an instrument of oppression," not to ensure that private individuals are protected from each other or themselves. *DeShaney v. Winnebago County Dept. Soc. Serv.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The Due Process Clause therefore "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.*

■■ This general rule is subject to two exceptions: (1) when the government has a "special relationship" with an individual; and (2) when the government has affirmatively acted to place an individual in danger. *Grubbs*, 974 F.2d at 121. In these limited circumstances, the state has an affirmative duty under the Due Process Clause to protect individuals. A state creates a "special relationship" with a person when it acts to "restrain an individual's freedom to act on his own behalf, either through incarceration, institutionalization, or other similar restraint of personal liberty." *DeShaney*, 489 U.S. at 199, 109 S.Ct. 998; *see also Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058–59 (9th Cir. 1998) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes some responsibility for [that person's] safety and general well-being."). The District has not restrained Imrie's liberty or taken her into custody. Nor has plaintiff established that there is any other basis for a special relationship. *Cf. Youngberg v. Romeo*, 457 U.S. 307, 314–25, 102 S.Ct.

2452, 73 L.Ed.2d 28 (1982) (patient in facility for mentally disabled); *Estelle v. Gamble,* 429 U.S. 97, 103–4, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (prisoner); *Wang v. Reno,* 81 F.3d 808, 818 (9th Cir.1996) (alien brought to United States and held in custody to act as witness).

▉ The state also has a duty under the Due Process Clause to protect someone when it "places a person in peril in deliberate indifference to their safety." *Penilla v. City of Huntington Park,* 115 F.3d 707, 709 (9th Cir.1997) (holding police liable for locking injured plaintiff in his house, cancelling the request for paramedics, and leaving). This exception "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *Grubbs,* 974 F.2d at 121 (finding hospital created danger when it assigned a known sex offender to work with the female plaintiff). A state's awareness of dangers is insufficient to state a claim under the Due Process Clause if the state "played no part in their creation" or did "anything to render [plaintiff] any more vulnerable to them." *DeShaney,* 489 U.S. at 201, 109 S.Ct. 998.[2]

▉ Plaintiffs allege that defendants placed Imrie in danger by continuing to open the Bridge to pedestrians without a suicide barrier, thereby creating an unnecessarily facile opportunity for her to take her life. Plaintiffs also allege that defendants are aware of the history of suicides on the Bridge and that they have nonetheless rejected proposals for suicide barriers. Such allegations, however, do not constitute "affirmative conduct on the part of the state in placing the plaintiff in danger."

*Grubbs,* 974 F.2d at 121. At most, plaintiffs contend that defendants failed to take action knowing that the Bridge was dangerous to those who wished to commit suicide, a claim of negligence that is not remediable through the Due Process Clause. *See Daniels v. Williams,* 474 U.S. 327, 330–32, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Even the District's numerous decisions against erecting a suicide barrier are not affirmative acts necessary to state a constitutional claim. To create a danger, the state must have "left [plaintiff] in a situation that was more dangerous than the one in which they found [her]." *Munger v. City of Glasgow Police Dept.,* 227 F.3d 1082, 1086 (9th Cir.2000) (finding liability where police expelled a visibly drunk man from a bar in freezing temperatures with no means of getting home). The District's decisions simply left the situation as it was before, and thus the danger to those such as Imrie remained the same.

▉ The Due Process Clause is a mandate of negative liberties: it requires the state to abstain from depriving individuals of their rights but does not act "as a guarantee of certain minimal levels of safety and security." *DeShaney,* 489 U.S. at 195, 109 S.Ct. 998. The state is not held responsible merely because it refused to protect Imrie from herself. Because this court finds that defendants did not take any affirmative action that placed Imrie in danger, plaintiffs have failed as a matter of law to state a claim under section 1983 for deprivation of Imrie's right to life under the Fourteenth Amendment.[3]

2. The Ninth Circuit has yet to decide whether defendants must ignore a risk to a specific individual, or whether deliberate indifference to a risk to the general public is sufficient to state a claim under section 1983. *Huffman v. County of Los Angeles,* 147 F.3d 1054, 1061

(9th Cir.1998). This court need not reach this issue in the instant action.

3. Defendants argue that the their conduct does not meet the standard for violations of the Due Process Clause as either a legislative or executive action. *See Lewis,* 523 U.S. at

 Plaintiffs' claim that defendants deprived Mulligan of familial companionship with decedent fails for the same reasons. "It is well established that a parent has a 'fundamental liberty interest' in the 'companionship and society of his or her child' and that 'the state's interference with that liberty interest without due process of law is remediable under [42 U.S.C. § ] 1983.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir.2001) (quoting *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir.1985)). Barring the two exceptions discussed above, however, the Due Process Clause does not provide a cause of action for omissions by the state. *See DeShaney*, 489 U.S. at 195, 109 S.Ct. 998. Defendants in the instant action were under no constitutional duty to protect Imrie from taking her own life and therefore cannot be held liable for depriving her mother of her companionship. Thus, plaintiffs have failed to state a claim for deprivation of familial association under section 1983.[4]

In order to impose liability on a local governmental entity under section 1983, plaintiffs must first establish that Imrie possessed a constitutional right of which she was deprived. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992) ("We must first determine whether plaintiff possessed

a liberty interest in being free from extended incarceration without any arraignment or pretrial procedure."). Only then does the court look to whether there was a policy of "deliberate indifference" that was the "moving force behind the constitutional violation." *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Because neither Imrie nor Mulligan have a cognizable constitutional right, this court finds that plaintiffs have failed to state a claim for municipal liability under section 1983.

*CONCLUSION*

For the foregoing reasons, defendants' motion for judgment on the pleadings is GRANTED. Because the claims over which the court has original jurisdiction have been eliminated before trial, the court also DISMISSES without prejudice the remaining state law claims in this action. *See* 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED.

---

846, 118 S.Ct. 1708 ("[C]riteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue."). This court need not address these arguments, as plaintiffs have failed to establish a right protected under the Fourteenth Amendment.

4. Plaintiffs also allege a violation of Mulligan's familial association rights under the First Amendment. The Ninth Circuit has generally characterized the right to familial association as a liberty right under the Due Process Clause. *See Kelson*, 767 F.2d at 655. In *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir.2001), the Circuit found that the plaintiffs stated a claim for deprivation of familial association under both the First and

the Fourteenth Amendments. *Id.* at 685–86 (citing *Board of Dir. v. Rotary Club*, 481 U.S. 537, 545, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987)). To the extent that there is a separate cause of action under the First Amendment for deprivation of the right to familial association, defendants are also entitled to a judgment on the pleadings. Plaintiffs have alleged no actions by the District that interfered with the companionship between Mulligan and her daughter. *Cf. Lee*, 250 F.3d at 685–86 (Plaintiffs alleged that police department told mother "they had no record of, or information concerning, her son, when in fact, they knew or should have known that they had falsely arrested him and caused him to be extradited to New York.").