NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JENNIFER GILLILAND, *Plaintiff/Appellant*,

*v.*

CARLEE LILL, et al., *Defendants/Appellees*.

No. 1 CA-CV 17-0337
FILED 3-27-2018

Appeal from the Superior Court in Maricopa County
No. CV2016-090669
The Honorable Robert H. Oberbillig, Judge (Retired)

**AFFIRMED**

COUNSEL

Keith M. Knowlton LLC, Tempe
By Keith M. Knowlton
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By James B. Bowen, Daniel P. Schaack
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

**H O W E**, Judge:

¶1          Jennifer Gilliland appeals the trial court's dismissal of her amended complaint against Department of Child Safety[1] case manager Carlee Lill. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          The underlying facts are undisputed. In April 2011, because of mental illness, Gilliland erroneously believed that her daughter, M.G., was not actually her daughter. M.G. told her teacher about Gilliland's conduct and the teacher reported it to the Department. The Department subsequently petitioned for dependency, alleging that M.G. was dependent due to Gilliland's mental health and neglect by failing to provide proper supervision and care. The juvenile court found M.G. dependent and the Department placed M.G. with her teacher and his spouse as foster parents. During the dependency's duration, Lill was the assigned case manager.

¶3          Over the next seven months, Gilliland participated in services to address the mental health and neglect issues, but M.G.'s Guardian Ad Litem ("GAL") nevertheless moved to terminate Gilliland's parental rights in November 2011. The juvenile court denied the termination motion in May 2012 and ordered that the case plan be family reunification and that the Department provide services to Gilliland and M.G. that would help mend their relationship. Lill facilitated these services.

¶4          In early 2013, Gilliland became concerned that M.G.'s foster parents were alienating M.G.'s affections toward her and requested a change in M.G.'s placement. In May 2013, M.G.'s foster parents moved to

---

[1]          During the time of this case, Child Protective Services was a division of the Arizona Department of Economic Security; the Department of Child Safety has since undertaken its responsibilities. *See* 2014 Ariz. Sess. Laws, ch. 1 §§ 6, 20, 55 (2d Spec. Sess.). For consistency, we refer to Child Protective Services as the Department throughout this decision.

intervene in the dependency. The Department opposed the foster parents' motion and noted that the foster parents were interfering with the family reunification case plan and wanted to adopt M.G. In a June 2013 report to the juvenile court, Lill discussed Gilliland's progress in services. Lill added that M.G.'s therapist, GAL, and foster parents had thwarted reunification efforts because of their desire to honor M.G.'s statement that she was not "ready" to have visitations and therapy with Gilliland. The juvenile court denied the foster parents' motion to intervene and ordered that Gilliland and M.G. engage in counseling to facilitate therapeutic visitation. During this time, M.G. told Gilliland that she would never speak to her again if Gilliland did not rescind the request for a change in M.G.'s placement. Gilliland withdrew the request.

¶5            Gilliland and M.G. participated in family therapy without success. The family therapist found that M.G.'s individual therapist was not helping to facilitate therapeutic visitation and that the foster parents did not encourage M.G. to participate in the visitation. Because family therapy had been unsuccessful, the Department informed the juvenile court in December 2013 that the family reunification case plan was infeasible and that since M.G. was now 16 years old, the Department recommended a long-term foster care case plan. The juvenile court agreed and changed the case plan to long-term foster care.

¶6            In May 2014, Lill reported that the family therapy service had ended because M.G. stated that she was not ready for increased communication with Gilliland. Lill also reported that the Department would continue to provide monthly case management services but recommended that M.G. remain with her foster family with ongoing visits with Gilliland whenever M.G. was ready. The Department also recommended that the case plan be changed to independent living, which the juvenile court granted.

¶7            Six months later, the Department notified the juvenile court that it would seek to terminate Gilliland's parental rights. The juvenile court requested that a termination petition be filed. The following month, M.G. had her counsel file a termination motion. After the Arizona Adoption Review Board informed M.G. that she would not qualify for services if she were adopted, M.G. withdrew her termination motion. After M.G. withdrew her termination motion, the juvenile court dismissed the dependency effective the day before M.G.'s 18th birthday.

¶8            In March 2016, Gilliland brought a 42 U.S.C. § 1983 claim against Lill, alleging that Lill violated Gilliland's constitutional right to the

care, custody, and companionship of M.G. Lill moved to dismiss based on qualified immunity and the statute of limitations. The trial court ruled that Lill was entitled to qualified immunity because a case manager in this situation would not reasonably know that his or her conduct violated a parent's constitutional right while the parent's child was in the State's custody. Gilliland timely appealed.

## DISCUSSION

**¶9** Gilliland argues that Lill did not have qualified immunity and therefore the trial court erred by dismissing the amended complaint. Gilliland contends that she had a fundamental constitutional right to a continued relationship with her child and that Lill's conduct violated that right. We review the trial court's grant of qualified immunity in a § 1983 claim de novo. *See Ochser v. Funk*, 228 Ariz. 365, 369 ¶ 11 (2011). Because the alleged unlawfulness of Lill's conduct was not clearly established at the time of the challenged conduct, the trial court correctly found that Lill had qualified immunity.

**¶10** Federal law governs whether a government official has qualified immunity from a § 1983 claim. *Id.* at ¶ 12. "The doctrine shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Id.* Reviewing courts have discretion to decide which of the two prongs to consider first and need not address both prongs if either prong is satisfied. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Additionally, "[c]ourts should think carefully before expending scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." *Id.*

**¶11** A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Id.* at 741. This is so because government officials should know that their conduct is unlawful before they are subjected to suit. *Ochser*, 228 Ariz. at 371 ¶ 27. As such, "the right allegedly violated must be defined at an appropriate level of specificity before a court can determine if it was clearly established." *Id.* at 371 ¶ 27.

**¶12** Our supreme court has stated that "[t]o determine whether a right was clearly established at the time of an [official's] conduct, we look

to cases from the Supreme Court and [the Arizona Supreme Court], as well as cases from other courts exhibiting a consensus view." *Id.* at 372 ¶ 28. Although a case need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

**¶13**  Lill's conduct did not violate any clearly established law. Although Gilliland does not plainly state Lill's exact conduct that violated a clearly established law, we surmise her argument to be that Lill should have placed M.G. in, or later removed M.G. to, a foster family that supported the family reunification case plan. At the time of Lill's conduct, however, no court had held in a published decision that a case manager's objective reporting and decision to not remove a child from foster parents who interfered with a case plan violated a parent's right to a relationship with his or her child. Lill and the Department diligently complied with the case plan from the time that the dependency was initiated in April 2011 until the Department informed the court that family reunification was infeasible in December 2013. Lill reported to the juvenile court all the issues occurring with M.G. and the foster parents, and the juvenile court approved the change in case plan to long-term foster care. No reasonable case manager would have known that the conduct here violated any clearly established constitutional right a parent may have during a dependency proceeding. As such, Lill was entitled to qualified immunity.

**¶14**  Citing *Kelson v. City of Springfield*, 767 F.2d 651, 653–54 (9th Cir. 1985) and *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010), Gilliland counters that a State official is liable under § 1983 when the official's conduct: (1) deprives a parent of his or her protected liberty interest in ongoing companionship with his or her child, or (2) is so intrusive that the conduct essentially results in a termination of parental rights. But those cases describe at a high level of generality a parent's rights to companionship with his or her child and do not suffice in qualified immunity cases to provide a constitutional right that is beyond debate. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably . . . ."). The cases Gilliland relies on do not involve parents whose children are in State custody or define a clearly established right of those parents to expect a case manager to side with them when foster parents interfere with a case plan; that is, to advocate on behalf of the natural parents. Therefore, these cases are irrelevant to our consideration of whether Gilliland's right was clearly established at the time of the challenged conduct. And contrary to Gilliland's assertion, any alleged

violations were not so obvious that Gilliland's highly general allegations of impropriety by Lill satisfy the "clearly established" requirement. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (noting that where violations are obvious, the "clearly established" requirement can be satisfied when cast at a high level of generality even without a body of relevant case law).

**¶15**        Gilliland cites no authority supporting the legal premise that a Department case manager has a duty to force a parent's 16-year-old child to participate in therapy or visitation. Nor does Gilliland cite any cases that have held a Department case manager has a duty to act in a parent's favor during a dependency. While Gilliland is correct that M.G.'s foster parents interfered with the court-ordered case plan—and the Department does not argue otherwise—that interference was not attributable to Lill. In fact, Lill reported the interference to the juvenile court and Gilliland does not suggest that Lill was dishonest or failed to report that or any other pertinent information to the court. Lill exercised her discretion in not requesting a change in placement as did Gilliland when she rescinded her request for a change of placement. On this record, Gilliland has not shown any specific violations of a clearly established right, and the trial court did not err by dismissing Gilliland's amended complaint.

## CONCLUSION

**¶16**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA